We have three cases on the calendar this morning. A trade case, a veterans case, and a patent case from the district court. All argued. First case is Irwin Industrial Tool v. United States, 2018-12-15, Mr. Glover. May it please the court, I'm Matthew Glover on behalf of the United States. I'd like to reserve three minutes for rebuttal. The court of international trade erred in applying a narrow definition of wrenches under heading 8204. Its error excludes many commonly and commercially defined models of wrenches, and also conflicts with the explanatory notes to section 8204. The trade court went about this error by taking terms that were in the dictionaries that it looked at, usually components of wrenches, and also in some of the trade manuals, terms that were used to define flat wrenches, but doesn't cover the whole complement of tools that are wrenches. Heading 8204 is an AO nominee provision. So it defines a class of articles, and absent contrary legislative intent, limitation, or exclusion, wrenches in heading 8204 is meant to cover the entire complement of wrenches, or tools commonly and commercially known as wrenches. There's one limitation in heading 8204, the wrenches are to be hand operated, and there's an exclusion for tap wrenches. That's not an issue here. So when interpreting heading 8204, under general rule of interpretation one, this court must look at common and commercial meanings, and does not defer to the trial court. So it's a de novo review, your first step is defining wrenches, and that's where the trial court made an error, that's where the trial court went wrong. Wrenches are, in common and commercial usage, tools which have specific characteristics, rendering them the ability to hold an object and turn or twist that object, apply torque to it, or apply torque to prevent the object from turning and twisting. If we were to accept your view of a wrench, the classification for a wrench, what would happen to pliers? I mean, it seems that they would just swallow up all pliers and almost all handheld tools. No, Your Honor. So a traditional, well, for example, cutting pliers are not designed to hold or turn or twist, they're designed to cut something. But your traditional pliers don't have specific characteristics rendering them effective for applying torque. They have characteristics that make them versatile. They're used for holding wire, they can get in small places. Your traditional pair of pliers, I guess, is a light and nimble tool that can do a lot of things, so they wouldn't have the specific characteristics or have the design for being a wrench. So a pliers has different types of uses. Yes. A versatile tool and a wrench basically has one. Well, grasping and then specifically applying torque or grasping and applying torque to prevent something from being turned. Yes, Your Honor. And, you know, a lot of pliers and tools could be used to apply torque, but that wouldn't make a traditional pair of pliers a wrench. It's those specific characteristics that make it especially suited for and allow it to turn or twist or hold an object that's being turned or twist. And that's what the locking mechanism on these vice grip tools does. The trade court's definition of pliers was a hand tool, or sorry, of wrenches, I apologize, was a hand tool that has a head with jaws or sockets having surfaces adapted to snugly fit or exactly fit and engage the head of a fastener in parentheses such as a bolt or nut and a singular, close parentheses, and a singular handle with which to leverage hand pressure to turn the fastener without damaging it. This definition has four requirements thus. You need a head with jaws or sockets, you need a singular handle, it needs to work on fasteners, and it needs to not damage the fasteners. Those are characteristics of some wrenches, but they're not necessary nor required characteristics of the full complement of wrenches and, in fact, a number of those explicitly exclude tools that are commonly and commercially known as wrenches from the definition of wrench. For example, the requirement in the trade court's definition that a wrench apply to fasteners would exclude pipe wrenches because they apply to pipes and pipes are not fasteners. And that not only conflicts with common and commercial usage of pipe wrench, but the explanatory note to Heading 8204, EN 82.04, explicitly lists as wrenches, wrenches for hydrants and pipes, and then in parens, including chain-type pipe wrenches. The requirement that the head have jaws or sockets would also exclude chain-type pipe wrenches because, again, they use a chain, not a socket, and not a head. That requirement would also exclude the Allen wrench made ubiquitous by IKEA because it doesn't have a socket. Rather, it has a protrusion that works on the inside of the bolt head. Similarly, the requirement of having a singular handle would eliminate a number of wrenches, including the cross. Of course, these tools are marketed as pliers, aren't they? Yes, they are, Your Honor. But they were previously marketed by Irwin's predecessor as locking wrenches. So the fact that the marketing has changed doesn't change the nature of the tool, and it's not dispositive to what is commonly and commercially known as a wrench. So, again, the requirement of a singular handle, which the CIT looked at, and it's one of the reasons it excluded all of these tools from the definition of a wrench, that would exclude your typical cross lug wrench that has two bars welded together and has a socket on each end, typically used for removing tires. It would also exclude Swedish pattern pipe wrenches, which often have two handles, and certain other wrenches that have more than one handle. And the trade court, in using the singular handle, looked at a definition relied on also by Irwin in Webster's Third International Dictionary that talks about wrenches usually having a singular bar, not being required to have a singular bar. The trade court also erred in refusing to consider the use of the specific tools. Well, this is an AO nominee provision, and so use is not prevalent. The term wrenches... You're saying it isn't AO nominee provision? It is an AO nominee provision. That's 8202, 8203. Excuse me? The header 8203 is an AO nominee provision. Yes, as is 8204, Your Honor. Okay. 8203 being pliers. Why does use matter? So this court has said that use can matter for an AO nominee provision in two circumstances, if the name of the tariff provision itself inherently suggests a type of use, or if use of the subject articles defines them in terms of the identity of the class. And that comes from GRK Canada. Now, wrenches, as a class of tools, as we've defined them, are specifically...they have characteristics intended for grasping and applying torque. And so the ability to use a tool to grasp and apply torque is in the definition of wrenches. Pliers being more versatile, you would look at the uses to see if it's a nimble, versatile tool for grasping, in some cases cutting, like cutting pliers, stripping wires, work like that. The tools at issue are wrenches under the appropriate definition because the locking mechanism renders them particularly suitable for grasping and applying torque. As Irwin's chief engineer noted, they are, I guess, one of the intended purposes of the model, I believe it's model CR10, when it's locked, is to apply maximum torque. These are tools of last resort. If you have a bolt or a fastener that's been stripped and your other wrenches can't strip it, you can put one of these, tighten one of these, grasp it, and pull that or torque the bolt loose. These tools, the adjustable nature of them also, as with an adjustable, a traditional adjustable wrench that doesn't have a locking mechanism, would allow you to replace a whole set of wrenches. You normally need a wrench for each, I guess, size of bolt, size of pipe, size of fastener. And so the lock allows you to adjust and basically replace a whole lot of wrenches with the single tool. So your argument is not that all pliers should be moved over and made wrenches? No, Your Honor. Your argument is that these particular pliers, these vise grips, should be because they lock. Because they lock and the locking mechanism renders them particularly secure. Can you use it without locking it? I believe if you don't lock it, it releases and opens. I know that they, in their brief, suggest that you can, but we don't believe the evidence shows that. Can you use those pliers, say, to hold a nut while you're tying the bolt? Can't you use those pliers to hold the nut without actually locking them? I believe that they, as you compress, I believe that they lock, but I'm not sure that that's in the record or clear from the record, and so I don't have specific evidence. I think it is. I think it is in the record, but I don't recall exactly where. But you don't have to lock the vise grip in order to use it. Now, to lock the head on a nut, you have to use a locking mechanism, but not to just, you can loosen that bottom screw to a point to where it doesn't lock on anything, but yet you can get it on a nut and hold it. When you loosen the bottom screw, you open the size of the head opening, but when you were closing them, I believe it's still then locked. It's just locked at a much more open position. If the court doesn't have further questions, I'm happy to rest on our briefs and reserve my time for rebuttal. We will save it for you, Mr. Glover. Ms. Hadfield? Good morning, Your Honors, and may it please the court. Frances Hadfield on behalf of Irwin Industrial Tools. I've got a board. In it I've got a nail. I need to get that nail out of the board. I take my hammer, I use the back hand of it, and I wrench that nail and try to get it out of the board. Unfortunately, the top of that nail pops right off. So I say, oh, what am I going to do now? I'm going to go back to my tool chest, I'm going to go get a pliers, I'm going to wriggle and I'm going to pry that nail right on out of that board. This case is about the proper classification of Irwin Industrial Tools locking pliers. I know the government would like to frame this as a wrench issue. It's not a wrench issue. The issue is, how are my locking pliers properly classified? In order to do that, what the Court of International Trade did is it had to go and find the common... Once you lock onto something, let's say you lock onto a nut, doesn't that become a wrench at that point? No, absolutely not, Your Honor. Why not? This is an article that I could take my hand and I could grab a pliers that was non-locking and hold it fixed. It wasn't locked. And I could wrench that thing so those pliers aren't moving. How does the application locking it, for convenience sake, in a clamp-style fashion, make something a wrench and not a clamp? If we're going to talk about locking, we're going to talk locking in terms of clamping. And that's actually, if you look at our market... So your argument is that the locking pliers are clamps? Absolutely not, Your Honor. Locking pliers are pliers. The locking function of it is more like a clamping function. And, in fact, if you look at our use in marketing studies, which are, I believe, let's see, 551, I think, in our appendix. Let's go back to your scenario here. So you're pulling a... You're on your board and there's a bolt on there and there's a nut on the other side. And you say, oh, gee, I can't unscrew the bolt unless I hold that nut. You go to your tool chest and by the time you get there, you forget the size of the wrench that you need to hold that. You can get one of these pliers knowing that it's going to work, correct? Or regular pliers, knowing that it's going to work. Either one. And when we're going back to the common commercial meaning of the term pliers, well, how do we start with common for statutory purposes? Well, what this court has always done is it's always gone to the ASME and lexicons that are specific to the type of tool or item that's additional. It did it in Rocknell Fastener. It did it in GRK. It did it in Halfel American. So we have cases where, and Customs and Border Protection has said this as well, that it's particularly useful to use ASME, ANSI, those types of standards in defining the common meaning of a term. So we have the Court of International Trade that has used the ASME standard and the hand tool guide, which is referenced in the ASME standard, to define the term at issue pliers. And locking pliers, as it happens, meets both the ASME and the hand tool guide standard. If you look at the ASME, it lists pliers. It also, in the hand tool standard, lists pliers. And locking pliers come under both of those headings. So what do you do with Allen wrenches and chain pipe cutters and chain pipe wrenches? If we're going to go to the court's definition, I'm not going to die on the hill of the court's definition of wrench being correct, Your Honor. If I was going to define wrench, I would say that it was a base metal tool with a single handle or frame that is used to apply rotational torque.  Why doesn't that include the locking pliers? Because it's a single handle and the sole purpose of a wrench is to provide rotational torque. Let's go back to my nail example. Can I get a nail out of a board with a socket wrench or a box head wrench or anything? That nail is stuck. The only way I can get that nail out of the board is with pliers. And you had earlier talked about, are we going to make all pliers into wrenches? Well, how about a slip joint pliers? You're making a strong argument as to the importance of use in this case. That's not where you want to be, right? I have no thought that this should be a use provision. This is an AONOMNY provision. And I don't even think that these, like Quan Quan, are two conflicting provisions where they're equally applicable. These aren't equally applicable provisions. Under the common definition, locking pliers are under pliers. If we go to commercial, which the government brushed over, commercial definition has to deal with the product as sold at the time of importation. And so all of the evidence in the record is at the time of importation, these products are sold as pliers, locking pliers. They are marketed as such. Online they are sold as such. They're not sold under a wrench category. So we have a common commercial definition that meets the AONOMNY requirements of pliers in the tariff. But to what extent should we rely on use? I'm sorry? To what extent should we rely on use? Not at all, Your Honor. These are AONOMNY provisions. Use is not implicated. You were arguing that. You were making plenty of arguments concerning the use of the pliers, right? And I wouldn't say use. I would say application. Let's put it that. Use has a specific meaning within the tariff. Are we talking about actual use? Are we talking about principal use? We don't have language within the terms of the statute that has some sort of indicia, like self-tapping screw, I believe it was in GRK, or that indicated a use. Neither wrench nor pliers indicates a use. It indicates an article. An article that has an application. What's the relevance of twisting? I'm sorry? Twisting. Twisting, yes. Pliers twist, locking pliers twist. Wrenches twist? I'm sorry? Wrenches twist? Wrenches? Wrenches. Wrenches. A wrench. A wrench provides rotational torque. I would say that's a different thing. I can move my wrist in this fashion to twist either a locking pliers or to twist a regular pliers. If I'm going to unbolt something, I'm going to provide rotational torque to it with a single-handled article. All right. So back to my articles being pliers. So the court's definition was a versatile hand tool with two handles and two jaws that are flat or serrated and are on a pivot. Sounds like a pliers. Which must be squeezed together to enable a tool to grasp an object. Sounds like a pliers. The jaws may or may not lock together to hold the object while using the tool. Now, Judge Rana, I believe what you were referring to is in the affidavit of Mr. Lucas. He had talked about that the tool can be used in an unlocked position. That is true. So if you take the screw end on the original pliers and you move it down, you do not have to engage the locking mechanism in order to hold something. And I believe that was in his affidavit. So under the court's definition, we meet the term pliers. And the pliers provision, both the heading and the subheading, are actually class. Now, the government misspoke when they said that wrenches are a class. In order for a tariff statute to be a class of items, it has to have specific language. And there's plenty of court cases that have solved that. It has to say, and similar articles. There's nothing in the wrench provision that says, and similar articles. It's four things. That's all we have in that provision. So we are not within the scope of that provision, either by the common meaning that's defined by the ASME and the hand tool guide, Webster's Dictionary, which also the court relied on in making these definitions up, or the ENs. So we have a group or a class of pliers instead, not wrenches. And we have, in similar articles, cutting pliers, regular pliers, whether they lock or unlock, that all fall under that statutory heading. And, you know, one of the things that the Victoria's Secret decision that the Federal Circuit used when talking about ad justum generis classifications with pliers is that, you know, you have to use a common sense assessment of what articles are. And it is commonsensical that if we have the ASME, and we have the hand tool guide, and we have industry standards, and that hand tool guide, by the way, is a consensus opinion of all the American manufacturers as to what these products are. And it says so in its introduction. The unifying item, and that these pliers are, in fact, as a consensus matter, and an ad justum generis matter, pliers, locking pliers, cutting pliers, and regular pliers. No marketing to indicate that these products are sold in a manner other than as pliers. Anything further, counsel? No, I was going through my list of notes, Your Honor. I don't believe I have anything further. No, Your Honor. No one ever loses points by not using all their time. Thank you, sir. Mr. Glover, do you have some rebuttal time? I'd like to make a couple points. First of all, we're not contending that, or I guess let me back up in terms of opposing counsel's statement that wrenches are not a class in the provision. Provision 8204 is an AO nominee provision, and as this court made clear in Camelback and in other cases, quote, absent limitation or contrary legislative intent, an AO nominee provision includes all forms of the named article, even improved forms. That's at 649F3rd at 1364-65. So we're merely stating that wrenches, when it's used in heading 8204, is meant to include all forms of the article, all forms of wrench. And from GRI 1, we know that that means all tools that have a common and commercial definition. As I stated on direct, obviously there's the exclusion of tap wrenches and the limitation of these need to be hand-operated wrenches under 8204. I believe opposing counsel noted that she's not willing to die on the CIT's definition, but that's where the CIT went wrong right away. And in hearing her argument, she emphasized that wrenches have a single bar. If you look at the deposition testimony of Irwin's chief engineer, I believe it's at 690, appendix 699, or 698 to 699, he discusses that when the locking mechanism is engaged, the second lever isn't operating as a bar. And so, in addition, the single bar requirement does eliminate your cross-type lug wrench, as I discussed on my initial discussion. A wrench indicates torquing, and in the ASME standard for locking pliers class 1, which these fit into, there is a torque requirement and a torque test. The ASME standards for locking pliers also includes clamps in class, I believe it's 3, it may be 2, I apologize, but we discussed that in our brief. If the court has no further questions, I'm happy to give back the remainder of my time. Thank you. I think we have a good grip on the case. Thank you, Your Honor. We'll take it under advisement. Thank you.